IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| ATLAS GLOBAL TECHNOLOGIES, LLC, | § § § | |
| *Plaintiff* | § § | 6-21-CV-00818-ADA |
| -vs- | § § § | |
| SERCOMM CORPORATION, | § § | |
| *Defendant* | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Sercomm Corporation's ("Sercomm") Motion to Dismiss Plaintiff Atlas Global Technologies, LLC's ("Atlas") direct infringement, indirect infringement, and willful infringement claims pursuant to Federal Rule of Civ Procedure 12(b)(6). ECF No. 35 (the "Motion"). After careful consideration of the briefs and applicable law, the Court is of the opinion that Sercomm's Motion should be **DENIED-IN-PART** and **GRANTED-IN-PART**.

### I.    BACKGROUND

On August 9, 2021, Atlas sued Sercomm by alleging infringement of seven patents: U.S. Patent Nos. 9,763,259 ("the '259 Patent"), 9,825,738 ("the '738 Patent"), 9,912,513 ("the '513 Patent"), 9,917,679 ("the '679 Patent"), 10,020,919 ("the '919 Patent"), 10,756,851 ("the '851 Patent"), and 9,531,520 ("the '520 Patent") (collectively "the Asserted Patents"). See ECF No. 1 ¶ 1; ECF No. 33 ¶ 1 ("FAC"). The Asserted Patents were assigned to Atlas by Newracom, Inc., in February 2021. FAC ¶ 6. The Asserted Patents are alleged to cover essential aspects of the latest generation of Wi-Fi, known as "802.11ax" or more simply as "Wi-Fi 6." FAC ¶¶ 6, 28, 31–32.

Defendant Sercomm is a Taiwanese corporation with its principal place of business in Taipei, Taiwan. *Id.* ¶ 7. Sercomm develops broadband networking software and firmware and has created products for various types of users, including residential, commercial, and security products.

1

*See id.* ¶¶ 8–9. In this case, the products accused of infringement are Wi-Fi 6 broadband routers (also called "Access Points" or "APs") that can connect to Wi-Fi 6 networks and extend or improve coverage. *See id.* ¶¶ 37–39. Atlas alleges that Sercomm's Accused Products are "designed by Sercomm and operate consistent with the requirements of 802.11ax," which is also referred to as Wi-Fi 6. *See id.* ¶¶ 47, 57, 67, 76, 95, 104. Atlas alleges that the final version of 802.11ax was approved by the IEEE in February 2021, and that it improves on certain previous Wi-Fi standards. *Id.* ¶¶ 26–29.

Atlas sent Sercomm a notice on June 1, 2021, informing Sercomm of its standards-essential Wi-Fi 6 patents and inviting Sercomm to take a license. *Id.* ¶¶ 34–35, 112–13. Over the next two months, Atlas followed up with Sercomm on numerous occasions—including at least ten emails and two phone calls. *Id.* Atlas even explicitly identified specific Sercomm Wi-Fi 6 Access Points that required a patent license. *Id.* Sercomm tersely replied only that it "never asked for the licenses," was "not interested," and demanded that Atlas "stop sending [] email."

Notwithstanding the FAC, Sercomm filed its Motion to dismiss it on February 25, 2022. ECF No. 35. Sercomm's current Motion seeks to dismiss Atlas's direct infringement claims for six of the seven Asserted Patents (i.e., the '259, '738, '513, '679, '919, and '520 Patents), but does not move to dismiss the direct infringement claims for the '851 Patent. *Id.* at 4–15. Sercomm also moves to dismiss Atlas's indirect and willful infringement claims. *Id.* at 15–19. The Motion is now ripe for judgment.

II.     **LEGAL STANDARDS**

Rule 12(b)(6) requires that a complaint contain sufficient factual matter, if accepted as true, to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this factual plausibility standard, the plaintiff must plead "factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged," based on "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. However, in resolving a motion to dismiss for failure to state a claim, the question is "not whether [the plaintiff] will ultimately prevail, . . . but whether [the] complaint was sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678).

Section 271(b) of the Patent Act provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). To succeed on such a claim, the patentee must show that the accused infringer (1) knowingly induced direct infringement and (2) possessed "specific intent" to induce that infringement. *See MEMC Electr. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005). To state a claim for relief for induced patent infringement, "a complaint must plead facts plausibly showing that the accused infringer 'specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'" *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1376–77 (Fed. Cir. 2017) (quoting *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012)). To allege indirect infringement, the plaintiff must plead specific facts sufficient to show that the accused infringer had actual knowledge of the patents-in-suit, or was willfully blind to the existence of the patents-in-suit. *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766, 769 (2011) ("[I]nduced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement" or at least "willful blindness" to the likelihood of infringement.); *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015) ("Like

3

induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement."). A showing of willful blindness requires that "(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Global-Tech*, 563 U.S. at 769.

Similarly, to allege willful infringement, the plaintiff must plausibly allege the "subjective willfulness of a patent infringer, intentional or knowing." *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S.Ct. 1923, 1933 (2016). This requires a plaintiff to allege facts plausibly showing that the accused infringer: "(1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent." *Parity Networks, LLC v. Cisco Sys., Inc.*, No. 6:19-CV-00207-ADA, 2019 WL 3940952, at *3 (W.D. Tex. July 26, 2019).

### III.   ANALYSIS

#### A.  Direct Infringement

Sercomm's Motion to dismiss Atlas's direct infringement claims for six of the seven Asserted Patents primarily relies on the fact that Atlas sued only Sercomm—a Taiwanese Corporation—and not Sercomm's U.S. subsidiaries that are based in California and in Georgia. *See* ECF No. 37 at 1. Sercomm contends that for these six of the Asserted Patents, Atlas only asserts method claims and that Atlas alleges direct infringement of these claims based on use. *See id.* at 3 (citing FAC ¶¶ 47, 57, 67, 76, 85 and 104). Thus, Sercomm asserts that in both its FAC and in its opposition to the Motion, Atlas's pleading of three allegations of Sercomm's use in the United States fails to meet the plausibility standard under *Iqbal*. 556 U.S. at 678. Specifically, in its FAC and in its opposition to Sercomm's Motion, Atlas details three "exemplary occasions in which 'Sercomm uses the Accused Products in an infringing manner in the United States.'" ECF No. 36 at 5–6 (citing FAC ¶¶40–42). First, Atlas alleges that Sercomm employees use the Accused Products

4

to perform the infringing methods in the United States at Sercomm's U.S. offices (which use Sercomm's Wi-Fi 6 products to provide a wireless network) when sending and receiving data over Sercomm's wireless networks. *Id.* Second, Atlas alleges that "Sercomm employees also use the Accused Products to perform the infringing methods in the United States when they demonstrate the infringing Wi-Fi 6 features of the Accused Products to actual and potential U.S. customers, for example at trade shows, product demonstrations, and more generally as part of selling the Accused Products." *Id.* Third, Atlas alleges that "Sercomm employees also use the Accused Products to perform the infringing methods in the United States as part of providing customer support to Sercomm's actual and potential customers, for example when trouble-shooting customer issues and resolving technical problems." *Id.*

Sercomm responds that because Atlas "ignores" the distinction between the "offices" and "employees" of Sercomm Taiwan and its U.S. subsidiaries, Atlas has not sufficiently pleaded under *Iqbal.* ECF No. 37 at 5. Sercomm explains that for each of Atlas's three allegations of direct infringement, they should be dismissed under 12(b)(6) because they are speculative and do not rise above the pleading threshold of mere possibility.

***First***, as to Atlas's allegation that personnel of Sercomm Taiwan might perform the infringing methods "when sending and receiving data over Sercomm's wireless networks" when visiting the offices of non-party subsidiaries Sercomm USA, Inc. and Sercomm Technology, Inc., Sercomm argues that these offices are the offices non-parties to this case and that the "FAC cites no factual support for its speculation that these offices 'use Sercomm's Wi-Fi 6 products to provide a wireless network,' much less that these facilities use accused Sercomm Wi-Fi 6 Access Points in an infringing configuration with a plurality of Wi-Fi 6 STAs." *Id.* Sercomm contends that these allegations are "speculative on their face." *Id.* Moreover, Sercomm responds that "even if these non-party offices of the U.S. subsidiaries actually implemented an allegedly infringing configuration of

5

Wi-Fi 6 APs and STAs, Atlas fails to plead any facts plausibly demonstrating that personnel of Sercomm Taiwan both (a) visited and worked at those offices, and (b) practiced the patented methods during those hypothetical visits." *Id.* at 6.

***Second,*** as to Atlas's allegation that "Sercomm employees" performed the infringing methods in the U.S. at two CES trade shows, Sercomm contends that "[f]irst, there are no allegations that personnel of Sercomm Taiwan—as opposed to personnel of the non-party U.S. subsidiaries—were present at either trade show. . . .[,] [s]econd, the cited press releases do not indicate that any accused Wi-Fi 6 products were operationally demonstrated at the trade shows . . . .[, and there] are no allegations that (a) if the accused Wi-Fi 6 products were demonstrated, (b) they were connected with a plurality of STAs and operated in an infringing configuration (c) by Sercomm Taiwan personnel." *Id.* at 7.

***Third***, as to Atlas's allegation that "Sercomm employees" performed the patented methods in the U.S. "as part of providing customer support" to Sercomm's customers, Sercomm responds that Atlas "fails to plead any facts to support the notion (or even infer) that Sercomm Taiwan employees—as opposed to employees of the non-party U.S. subsidiaries— have provided technical support to U.S. customers." Further, Sercomm argues that "Atlas does not plead any facts to suggest that Sercomm Taiwan employees would be located in the U.S. while providing technical support to U.S. customers (if any)." *Id.*

Yet all Sercomm's arguments fall flat when considering the actual FAC. Sercomm complains that the amended complaint "does not identify any [] individuals" from Sercomm (Taiwan) that perform the claimed methods in the United States. Motion at 9. But Atlas's FAC identifies specific Sercomm employees from Taiwan by category and name. For example, Atlas points to "Sercomm's 'Executive Team' [who] use the Accused Products when demonstrating their functionality to customers at trade shows." FAC ¶ 41 (citing Sercomm's website that "cordially

6

invites you to join our executive team and experience our latest innovative and cutting-edge technology solutions" at the Consumer Electronics Show in Las Vegas, NV). Atlas even identifies several members of Sercomm's "executive team" by name, including Paul Wang, James Wang, and Ben Lin. *Id.* ¶ 40, n.1.

Atlas's FAC alleges, on a patent-by-patent basis, specific actions that these Sercomm employees perform during those three exemplary occasions in the United States. *Id.* ¶¶ 45–48, 55–58, 66–68, 75–77, 84–86, 103–105. Each patent section begins by alleging "Sercomm directly infringes the method claims of [the patent-at-issue] under 35 U.S.C. § 271(a) by using the Accused Products in the United States as described in paragraphs 40-42" (i.e., when at Sercomm's U.S. offices, at U.S. trade shows and product demonstrations, and when trouble-shooting U.S. customers' technical problems). *Id.* ¶¶ 47, 57, 67, 76, 85, 104 (emphasis added). Atlas then includes several paragraphs per patent detailing specifically how Sercomm uses its accused Wi-Fi 6 Access Points in the United States to infringe the method claims of that patent during those three exemplary occasions. *Id.* ¶¶ 45–48, 55–58, 66–68, 75–77, 84–86, 103–105.

These allegations are sufficient to survive at the motion to dismiss stage. Atlas only needs to plead "factual content that allows the court to *draw the reasonable inference* that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added). Here, based on the allegations in Atlas's Complaint, a reasonable inference can be drawn that Sercomm infringes the method claims of the Asserted Patents in the United States. Atlas's allegations are beyond mere speculation and conclusory statements.

Therefore, the Court finds that Atlas has sufficiently pled direct infringement in its Complaint and **DENIES** Sercomm's motion to dismiss as to Atlas's direct infringement claims.

B.  **Indirect Infringement and Willful Infringement**

Both induced infringement and willful infringement require that the alleged infringer have knowledge (or willful blindness) of the asserted patents. Here, Atlas alleges in its FAC that Sercomm committed both induced and willful infringement of the Asserted Patents. Atlas further alleges that this induced and willful infringement occurred pre-suit and post-suit. The Court finds that Atlas has not sufficiently plead pre-suit induced or willful infringement, but that Atlas has sufficiently plead post-suit induced and willful infringement.

i.  **Pre-suit Indirect and Willful infringement**

1.  *Actual Knowledge*

As for Sercomm's pre-suit actual knowledge of the Asserted Patents, Atlas alleges three facts that supposedly support Sercomm's knowledge of the asserted patents. FAC ¶¶ 33–36. First, Atlas alleges that "Sercomm has known that Newracom possessed patents relating to the 802.11ax Standard since at least March 11, 2015[,] when Newracom submitted a Letter of Assurance for Essential Patent Claims . . . to the IEEE." *Id.* ¶ 33. Second, Atlas alleges that "Sercomm also knew of the Asserted Patents on June 1, 2021, when Atlas notified Sercomm of them." *Id.* ¶ 34. Specifically, Atlas alleged in its FAC that "Atlas sent Sercomm (via its Senior Director of Business Development, Casey Hu) a letter notifying Sercomm that it had 'recently acquired Newracom's substantial Wi-Fi 6 SEP [Standard Essential Patent] portfolio." *Id.* Atlas further alleged in that letter that "Atlas specifically invited Sercomm to license the Asserted Patents." *Id.* Third, Atlas further alleged in its FAC that "[o]ver the next two months, Atlas further notified Sercomm of Atlas's portfolio and the Asserted Patents on numerous occasions." *Id.* ¶ 35. Specifically, Atlas alleges that "Atlas sent Sercomm ten emails on June 8, June 14, June 22, June 29, July 12, July 19, July 26, and August 2" that "made repeated reference to Atlas's 'Wi-Fi 6 Standard Essential Patent Portfolio,' and continued to press Sercomm to take a license." *Id.*   Sercomm contends that such allegations are

8

insufficient to allege that Sercomm had any pre-suit knowledge of any alleged infringement of the Asserted Patents because "none of Atlas's pre-litigation communications with Sercomm even identified the asserted patents, much less explanation how Sercomm's products allegedly infringe any patents." ECF No. 37 at 9. Therefore, Sercomm asserts that the Court should dismiss Sercomm's pre-suit indirect infringement claims and (2) the entire or at least pre-suit willful infringement claim.

"Multiple district courts, post-*Halo*, have held that general knowledge of a patent portfolio without more is insufficient even to plausibly allege knowledge of a particular asserted patent." *Kirsch Rsch. & Dev., LLC v. Tarco Specialty Prod., Inc.*, No. 6:20-CV-00318-ADA, 2021 WL 4555802, at *2 (W.D. Tex. Oct. 4, 2021) (internal quotation marks omitted). Because Atlas's Complaint does not plead sufficient facts that show that Sercomm had more than a general knowledge of Atlas's patent portfolio, its FAC cannot plausibly support an allegation of pre-suit knowledge. Accordingly, the Court finds that Atlas has failed to plausibly allege pre-suit knowledge of the Asserted Patents.

## 2. Willful Blindness

A showing of willful blindness requires that "(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Global-Tech*, 563 U.S. at 769. Atlas argues that this case "represents a classic case of willful blindness." ECF No. 36 at 17 (citing *Broad. Music, Inc. v. Edcon Enters. LLC*, No. 4:11-CV-1950-JAR, 2012 U.S. Dist. LEXIS 162544, at *9 (E.D. Mo. Nov. 14, 2012). Atlas argues that Sercomm willfully blinded itself to the existence of the Asserted Patents and its need for a license by "refus[ing] to engage" when "Atlas repeatedly told Sercomm of its Wi-Fi 6 portfolio to which Sercomm's Wi-Fi 6 products "require a license" and invited Sercomm to

9

substantively discuss the patents." *Id.* Atlas emphasizes that Sercomm's response to these repeated contacts was that it "not interested To WiFi 6, and will appreciate you to stop email me [sic]." *Id.*

While not addressed in the parties briefing, Atlas does attempt to plead willful blindness in its FAC. FAC ¶¶ 114–15. Specifically, Atlas pleaded that

> "Sercomm willfully blinded themselves to their infringement of the Asserted Patents and consciously refused to respond to Atlas's licensing overtures; once Atlas told Sercomm that it needed to take a license to the Asserted Patents for its Wi-Fi 6 Products, Sercomm believed with high probability that its Wi-Fi 6 products infringed but took deliberate action to avoid learning further details of its infringement from Atlas. In fact, after Sercomm was alerted to the Asserted Patents, Sercomm responded 'Please stop sending me email, thank you.'"

*Id.*

The Court first finds that Atlas has adequately pleaded that Sercomm took deliberate actions to avoid learning of the Asserted Patents by deliberately telling Atlas to stop sending them emails about taking a license to their Wi-Fi 6 patent portfolio. But for Sercomm's action of emailing Atlas telling them to stop emailing about potential licensing, it is plausible that Sercomm could have become aware of the Asserted Patents in a follow-up email from Atlas. Thus, the Court holds that Atlas has sufficiently pleaded the second prong of willful blindness under *Global-Tech*. *See* 563 U.S. at 769.

As to the first prong of willful blindness under *Global-Tech*, however, it is not clear that Atlas has sufficiently pleaded that Atlas subjectively believed that there is a high probability that the Asserted Patents existed. Merely pleading that the defendant was aware of a patent portfolio without more, as Atlas has done here, is not enough. *See Affinity Labs of Texas, LLC v. Toyota Motor North Am.*, 2014 WL 2892285, at *6 (W.D. Tex. May 12, 2014) (holding that "defendant's awareness of a plaintiff's patent portfolio is not enough to support a willful blindness claim to defeat a motion to dismiss").

Because Atlas's Complaint does not plead sufficient facts that would support an allegation of pre-suit knowledge, the Court **GRANTS** Sercomm's motion to dismiss Atlas's pre-suit indirect and willful infringement claims. However, given that it may have been impossible for Atlas to allege any pre-suit knowledge without the benefit of fact discovery, in accordance with the Court's usual practice, the Court permits Atlas to amend its Complaint after the start of fact discovery to include pre-suit indirect and willful infringement claims, if it is able to elicit sufficient facts to support such allegations. *See, e.g.*, *Parus Holdings Inc. v. Apple Inc.*, No. 6:19-cv-00432-ADA, Dkt. 101 (W.D. Tex. Jan. 31, 2020); *Castlemorton Wireless, LLC, v. Comcast Corp. et al.*, No. 6:20-cv-00034-ADA, Minute Entry Granting Motion to Dismiss (July 25, 2020) (text order only).

### ii. Post-suit Indirect and Willful infringement

While Sercomm's Motion appears to ask the Court to dismiss all of Atlas's indirect and willful infringement claims (including Atlas's claims arising after Atlas served its original complain), Sercomm's Motion fails to even address Atlas's pleadings of post-suit inducement and willful blindness. Thus, Sercomm has failed to meet its burden as to why these claims should be dismissed under Rule 12(b)(6). Even if Sercomm's Motion had addressed it, the Court would still disagree. *See USC IP P'ship, L.P. v. Facebook, Inc.*, No. 6:20-CV-00555-ADA, 2021 WL 3134260, at *2 (W.D. Tex. July 23, 2021). Serving a complaint will, in most circumstances, notify the defendant of the asserted patent and the accused conduct. So long as the complaint also adequately alleges that the defendant is continuing its purportedly infringing conduct, it will sufficiently plead a post-filing/post-suit willful infringement claim. Atlas's FAC complies with that standard. FAC ¶¶ 36, 110–15. Additionally, Atlas's FAC sufficiently alleges that Sercomm intended for others to infringe by making, using, offering to sell, selling, or importing into the United States the infringing products with the knowledge that such activities infringed. *Id.*, ¶¶ 10–11, 30, 33–36, 49–51, 59–61, 69–71, 78–80, 87–89, 97–99, 106–108. Because Atlas alleges that Sercomm has knowledge of the

Asserted Patents and of the alleged infringement at least at the commencement of this action, the Court finds that Atlas has sufficiently alleged its post-suit indirect and willful infringement claims.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Sercomm's Motion to dismiss Atlas's direct infringement claim and post-suit indirect and willful infringement claims and **GRANTS** Sercomm's Motion to dismiss Atlas's pre-suit indirect and willful infringement claims. However, Atlas is allowed to amend its Complaint and re-plead pre-suit indirect and willful infringement claims if it is able to elicit sufficient facts during fact discovery to support such allegations.

SIGNED this 31st day of October, 2022.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE