**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| ATLAS GLOBAL TECHNOLOGIES LLC,<br><br>Plaintiff,<br><br>v.<br><br>SERCOMM CORPORATION,<br><br>Defendant. | Case No. 6:21-CV-818<br>JURY TRIAL DEMANDED |
| SERCOMM CORPORATION,<br><br>Counterclaim-Plaintiff,<br><br>v.<br><br>ATLAS GLOBAL TECHNOLOGIES LLC,<br><br>Counterclaim-Defendant. | |

**SERCOMM'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO ATLAS' FIRST AMENDED COMPLAINT**

Defendant Sercomm Corporation, ("Sercomm," "Defendant," or "Counterclaim-Plaintiff") answers Plaintiff Atlas Global Technologies LLC's ("Atlas," "Plaintiff," or "Counterclaim-Defendant") First Amended Complaint (Dkt. 33) as follows. The section headers in this Answer correspond to the section headers in the First Amended Complaint and are included only for clarity and should not be deemed as an admission of any allegations contained in such section headers. References to complaint paragraphs within the answer are references to the corresponding paragraphs in the First Amended Complaint. Except as expressly admitted, Sercomm denies each and every allegation in Atlas' First Amended Complaint.

## NATURE OF THE ACTION

1. Sercomm admits that this is an action for patent infringement and that Atlas is the Plaintiff in this action. Sercomm denies that its products infringe U.S. Patent Nos. 9,763,259 ("the '259 patent"), 9,825,738 ("the '738 patent"), 9,912,513 ("the '513 patent"), 9,917,679 ("the '679 patent"), 10,020,919 ("the '919 patent"), 10,756,851 ("the '851 patent") or 9,531,520 ("the '520 patent") (collectively, the "Patents-In-Suit" or "Asserted Patents"). Sercomm is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 2, and therefore denies those allegations.

2. Sercomm denies that it directly infringes the claims of the Asserted Patents.

3. Sercomm denies that it indirectly infringes the claims of the Asserted Patents.

4. Sercomm denies that it infringes the Asserted Patents, and therefore denies this paragraph.

## THE PARTIES

5. Sercomm is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 5 of the Complaint, and therefore denies them.

6. Sercomm is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 6 of the Complaint, and therefore denies them.

7. Admitted.

8. Sercomm admits that the quotations contained within this paragraph are contained within Sercomm's website and documents; otherwise denied.

9. Sercomm admits that the quotation contained within this paragraph is on its website, and that it imports some of its products into the United States; otherwise denied.

10. Sercomm admits that the quotations contained within this paragraph are on its

website; otherwise denied.

11. Sercomm admits that the quotations contained within this paragraph are in its 2020 Annual Report; otherwise denied.

## JURISDICTION

12. Admitted.

13. Sercomm denies that it commits acts of direct or indirect patent infringement, but admits that it attends trade shows and sells certain of its products within the United States.

14. Sercomm admits that it has submitted pleadings in *BE Labs, Inc. v. Sercomm Corp.*, 6:21-cv-72-ADA (W.D. Tx.), including the pleading referenced in this paragraph, but otherwise denies the allegations in paragraph 14.

15. Sercomm admits that it has applied for FCC registrations for the products referenced in this paragraph, but denies that it directly or indirectly infringes the Patents-In-Suit or that it targets its business activities towards Texas and its residents.

16. Sercomm denies that it directly or indirectly infringes the Patents-In-Suit and denies that it targets its business activities toward the State of Texas and its residents.

17. Sercomm admits that it imports some of its products into the United States, but denies that its products are infringing and therefore denies the balance of this paragraph.

18. Sercomm admits that it sells products to certain internet service providers, including Charter Communications, but is without sufficient information to know whether those products can be purchased by end consumers in Texas. Sercomm denies that it sells its products to end consumers on the internet (including customers in Texas) through websites such as Amazon.com, Alarm.com, and Link Labs.

19. Sercomm admits that it sells products to Charter Communications, but is without

knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 19 of the Complaint, and therefore denies them.

20. Sercomm admits that it sells products to certain internet service providers, including Charter Communications, but denies that it purposefully directs its business activities towards Texas and its residents.

21. Sercomm admits that it sells products to certain internet service providers, including Charter Communications, but Sercomm is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 21 of the Complaint, and therefore denies them.

22. Sercomm is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 22 of the Complaint, and therefore denies them.

## VENUE

23. Sercomm admits that it is a foreign corporation, but except as expressly admitted herein denies the remaining allegations of paragraph 23.

24. Sercomm denies the allegations in paragraph 24 of the Complaint.

25. Sercomm admits that it has submitted pleadings in *BE Labs, Inc. v. Sercomm Corp.*, 6:21-cv-72-ADA (W.D. Tx.), including the pleading referenced in this paragraph, but otherwise denies the allegations in paragraph 25.

## THE 802.11 STANDARD

26. Sercomm admits that Wireless Area Networks (WLANs) operate using the frequency bands listed and that the IEEE is the standards-setting body for Wi-Fi, but otherwise denies the characterizations in paragraph 26.

27. Sercomm admits that the IEEE has published the versions of the 802.11 standard

referenced in this paragraph, but otherwise denies the characterizations in paragraph 27.

28. Sercomm admits that the final version of the 802.11ax standard was published by the IEEE on February 9, 2021.

29. Sercomm admits that the quoted language appears in the documents and websites referenced in paragraph 29 of the complaint, but otherwise denies the characterizations in paragraph 29.

30. Sercomm admits that the quoted language appears on its website and in the 2020 Annual Report referenced in paragraph 30 of the complaint, but otherwise denies the characterizations in paragraph 30.

## NEWRACOM

31. Sercomm admits that former Newracom employees are listed as inventors on the face of the Asserted Patents and that the Electronics & Telecommunications Research Institute ("ETRI") is a Korean research institution, but otherwise denies the allegations and characterizations in paragraph 31.

32. Sercomm admits that Newracom made submissions to the 802.11ax Task Group and that some of those submissions were adopted, but otherwise denies the allegations and characterizations in paragraph 32.

## SERCOMM'S KNOWLEDGE OF NEWRACOM'S PATENTS

33. Sercomm admits that Newracom submitted a Letter of Assurance for Essential Patent Claims ("LOA") to the IEEE on March 11, 2015, but denies that Sercomm has known that Newracom possessed patents relating to the 802.11ax Standard since that date.

34. Sercomm admits that the correspondence attached to the complaint and referenced in paragraph 34 contains the quoted language, but denies that the correspondence was sent to

Sercomm Corporation and also denies the remaining allegations and characterizations in paragraph 34.

35. Sercomm admits that the correspondence attached to the complaint and referenced in paragraph 35 exists, but denies that the correspondence was sent to Sercomm Corporation and also denies the remaining allegations and characterizations in paragraph 35.

36. Sercomm admits that the date of the filing of the initial complaint was August 9, 2021 and that it waived service of the initial Complaint on September 15, 2021, but otherwise denies the allegations in paragraph 36.

## SERCOMM'S USE OF THE PATENTED TECHNOLOGY

37. Sercomm admits that it imports products into the United States that have Wi-Fi capabilities, but otherwise denies the allegations and characterizations in paragraph 37.

38. Sercomm admits that some of the products listed in paragraph 38 are Sercomm products and that the listed products support the 802.11ax-2021 (Wi-Fi 6) standard, but denies that the list is an accurate representation of distinct Sercomm products. Sercomm further notes that many of the listed products in this paragraph are not imported or sold within the U.S. market.

39. Sercomm admits that the products shown in paragraph 39 support the Wi-Fi 6 standard.

40. Sercomm admits that certain of its employees may travel to the United States; otherwise the allegations in paragraph 40, including the allegations in footnote 1, are denied.

41. Sercomm admits that certain of its employees may travel to the United States; otherwise the allegations in paragraph 41 are denied.

42. Sercomm admits that its employees provide customer support; otherwise the allegations in paragraph 42 are denied.

**FIRST COUNT**
**(Infringement of U.S. Patent No. 9,763,259)**

43. Sercomm incorporates by reference its responses to paragraphs 1-42 of the First Amended Complaint, as if fully set forth herein.

44. Sercomm admits that the patent title and priority information recited on the face of the ’259 patent are properly listed, and that Exhibit A is a copy of the ’259 patent.

45. Sercomm denies the allegations and characterizations in paragraph 45, and notes that the language recited within the four corners of the ’259 patent speaks for itself.

46. Sercomm denies the allegations of paragraph 46.

47. Sercomm denies the allegations of paragraph 47.

48. Sercomm denies the allegations of paragraph 48.

49. Sercomm denies the allegations of paragraph 49.

50. Sercomm denies the allegations of paragraph 50.

51. Sercomm denies the allegations of paragraph 51.

52. Sercomm denies the allegations of paragraph 52.

**SECOND COUNT**
**(Infringement of U.S. Patent No. 9,825,738)**

53. Sercomm incorporates by reference its responses to paragraphs 1-52 of the First Amended Complaint, as if fully set forth herein.

54. Sercomm admits that the patent title and priority information recited on the face of the ’738 patent are properly listed, and that Exhibit B is a copy of the ’738 patent.

55. Sercomm denies the allegations and characterizations in paragraph 55, and notes that the language recited within the four corners of the ’738 patent speaks for itself.

56. Sercomm denies the allegations of paragraph 56.

57. Sercomm denies the allegations of paragraph 57.

58. Sercomm denies the allegations of paragraph 58.

59. Sercomm denies the allegations of paragraph 59.

60. Sercomm denies the allegations of paragraph 60.

61. Sercomm denies the allegations of paragraph 61.

62. Sercomm denies the allegations of paragraph 62.

## THIRD COUNT
## (Infringement of U.S. Patent No. 9,912,513)

63. Sercomm incorporates by reference its responses to paragraphs 1-62 of the First Amended Complaint, as if fully set forth herein.

64. Sercomm admits that the patent title and priority information recited on the face of the ’513 patent are properly listed, and that Exhibit C is a copy of the ’513 patent.

65. Sercomm denies the allegations and characterizations in paragraph 65, and notes that the language recited within the four corners of the ’513 patent speaks for itself.

66. Sercomm denies the allegations of paragraph 66.

67. Sercomm denies the allegations of paragraph 67.

68. Sercomm denies the allegations of paragraph 68.

69. Sercomm denies the allegations of paragraph 69.

70. Sercomm denies the allegations of paragraph 70.

71. Sercomm denies the allegations of paragraph 71.

72. Sercomm denies the allegations of paragraph 72.

## FOURTH COUNT
## (Infringement of U.S. Patent No. 9,917,679)

73. Sercomm incorporates by reference its responses to paragraphs 1-72 of the First

Amended Complaint, as if fully set forth herein.

74. Sercomm admits that the patent title and priority information recited on the face of the ’679 patent are properly listed, and that Exhibit D is a copy of the ’679 patent.

75. Sercomm denies the allegations and characterizations in paragraph 75, and notes that the language recited within the four corners of the ’679 patent speaks for itself.

76. Sercomm denies the allegations of paragraph 76.

77. Sercomm denies the allegations of paragraph 77.

78. Sercomm denies the allegations of paragraph 78.

79. Sercomm denies the allegations of paragraph 79.

80. Sercomm denies the allegations of paragraph 80.

81. Sercomm denies the allegations of paragraph 81.

## FIFTH COUNT
## (Infringement of U.S. Patent No. 10,020,919)

82. Sercomm incorporates by reference its responses to paragraphs 1-81 of the First Amended Complaint, as if fully set forth herein.

83. Sercomm admits that the patent title and priority information recited on the face of the ’919 patent are properly listed, and that Exhibit E is a copy of the ’919 patent.

84. Sercomm denies the allegations and characterizations in paragraph 84, and notes that the language recited within the four corners of the ’919 patent speaks for itself.

85. Sercomm denies the allegations of paragraph 85.

86. Sercomm denies the allegations of paragraph 86.

87. Sercomm denies the allegations of paragraph 87.

88. Sercomm denies the allegations of paragraph 88.

89. Sercomm denies the allegations of paragraph 89.

90. Sercomm denies the allegations of paragraph 90.

**SIXTH COUNT**
**(Infringement of U.S. Patent No. 10,756,851)**

91. Sercomm incorporates by reference its responses to paragraphs 1-90 of the First Amended Complaint, as if fully set forth herein.

92. Sercomm admits that the patent title and priority information recited on the face of the ’851 patent are properly listed, and that Exhibit F is a copy of the ’851 patent.

93. Sercomm denies the allegations and characterizations in paragraph 93, and notes that the language recited within the four corners of the ’851 patent speaks for itself.

94. Sercomm denies the allegations of paragraph 94.

95. Sercomm denies the allegations of paragraph 95.

96. Sercomm denies the allegations of paragraph 96.

97. Sercomm denies the allegations of paragraph 97.

98. Sercomm denies the allegations of paragraph 98.

99. Sercomm denies the allegations of paragraph 99.

100. Sercomm denies the allegations of paragraph 100.

**SEVENTH COUNT**
**(Infringement of U.S. Patent No. 9,531,520)**

101. Sercomm incorporates by reference its responses to paragraphs 1-100 of the First Amended Complaint, as if fully set forth herein.

102. Sercomm admits that the patent title and priority information recited on the face of the ’520 patent are properly listed, and that Exhibit G is a copy of the ’520 patent.

103. Sercomm denies the allegations and characterizations in paragraph 103, and notes that the language recited within the four corners of the ’520 patent speaks for itself.

104. Sercomm denies the allegations of paragraph 104.

105. Sercomm denies the allegations of paragraph 105.

106. Sercomm denies the allegations of paragraph 106.

107. Sercomm denies the allegations of paragraph 107.

108. Sercomm denies the allegations of paragraph 108.

109. Sercomm denies the allegations of paragraph 109.

## WILLFULNESS

110. Sercomm denies the allegations of paragraph 110.

111. Sercomm admits that companies make contributions to the Wi-Fi 6 standard through the IEEE process, and that Newracom was one of the contributors to the standard, but otherwise denies the allegations and characterizations of paragraph 111.

112. Sercomm admits that the correspondence attached to the complaint and referenced in paragraph 112 contains the quoted language, but denies that the correspondence was sent to Sercomm Corporation and also denies the remaining allegations and characterizations in paragraph 112.

113. Sercomm admits that the correspondence attached to the complaint and referenced in paragraph 113 exists and contains the quoted language, but denies that the correspondence was sent to Sercomm Corporation and also denies the remaining allegations and characterizations in paragraph 113.

114. Sercomm denies the allegations in paragraph 114.

115. Sercomm denies the allegations in paragraph 115.

## PRAYER FOR RELIEF

These paragraphs set forth the relief Atlas requests, to which no response is required.

Nevertheless, Sercomm denies that Atlas is entitled to any relief, and specifically denies all the allegations and prayers for relief contained in paragraphs (a) through (g) of Atlas' requested relief.

**DEMAND FOR JURY TRIAL**

This paragraph is a statement to which no response is required.

**AFFIRMATIVE DEFENSES**

Sercomm asserts the following affirmative defenses. To the extent any of the defenses, in whole or in part, relates to or negates an element of Atlas' claims, Sercomm in no way seeks to relieve Atlas of its burden of proof or persuasion on that element. All defenses are pleaded in the alternative and do not constitute an admission of liability or that Atlas is entitled to any relief whatsoever. Sercomm reserves any and all rights to assert additional defenses and/or counterclaims as additional facts are learned during discovery.

**FIRST AFFIRMATIVE DEFENSE**
**(No Infringement)**

Sercomm does not infringe and has not infringed any valid and enforceable claim of the Asserted Patents, literally or under the doctrine of equivalents, directly or indirectly, willfully or otherwise. Sercomm has not performed any act and is not proposing to perform any act in violation of any rights validly belonging to Atlas.

**SECOND AFFIRMATIVE DEFENSE**
**(Invalidity)**

The asserted claims of the asserted patents are invalid for failure to satisfy the requirements set forth in Title 35 of the United States Code, including without limitation, for example, Sections 101, 102, 103, 111, 112, 116 and/or 132.

**THIRD AFFIRMATIVE DEFENSE**
**(Limitation on Damages)**

Atlas' claims for damages are statutorily limited under 35 U.S.C. §§ 286, 287, and/or

288.

**FOURTH AFFIRMATIVE DEFENSE**
**(Prosecution History Estoppel and Disclaimer)**

Atlas' claims are barred in whole or in part by the doctrines of prosecution history estoppel and/or prosecution disclaimer.

**FIFTH AFFIRMATIVE DEFENSE**
**(Ensnarement)**

Atlas' claims are barred or limited in whole or in part by the doctrine of ensnarement.

**SIXTH AFFIRMATIVE DEFENSE**
**(Equitable Doctrines)**

Atlas' claims are barred in whole or in part under principles of equity, including without limitation, laches, waiver, estoppel, disclaimer, patent misuse, and/or unclean hands.

**SEVENTH AFFIRMATIVE DEFENSE**
**(License and Exhaustion)**

Atlas' claims are barred to the extent the alleged infringement is licensed, either expressly or impliedly, or otherwise authorized. Atlas' claims are also barred to the extent that Atlas has exhausted its rights and remedies as to the alleged infringement.

**EIGHTH AFFIRMATIVE DEFENSE**
**(No Basis for Injunctive Relief)**

Atlas is not entitled to injunctive relief under any theory, at least because: (1) Atlas has not suffered nor will it suffer irreparable harm because of Sercomm's conduct; (2) any harm to Atlas would be outweighed by the harm to Sercomm if an injunction were entered; (3) Atlas has an adequate remedy at law even if it were to prevail in this action; and (4) the public interest would not be served by an injunction in favor of Atlas.

**NINTH AFFIRMATIVE DEFENSE**
**(Failure to State a Claim)**

Atlas has failed to state a claim upon which relief can be granted.

**TENTH DEFENSE**
**(Lack of Standing)**

Plaintiff's claims are barred by a lack of standing.

**ELEVENTH DEFENSE**
**(Not an Exceptional Case)**

If Plaintiff is entitled to any remedy, Plaintiff is not entitled to a finding that this case is exceptional warranting attorneys' fees under 35 U.S.C. § 285, or pursuant to the Court's inherent power.

**TWELFTH DEFENSE**
**(Violation of FRAND Commitment)**

To the extent any of the Asserted Patents are alleged by Atlas to be infringed because of compliance with any standards, such as standards adopted by the IEEE, Atlas does not offer licenses to the Asserted Patents on fair, reasonable and non-discriminatory terms and therefore Atlas is not entitled to any recovery.

**THIRTEENTH DEFENSE**
**(No Willful Infringement)**

To the extent Atlas asserts that Sercomm infringes the Asserted Patents, any such infringement is not willful and would not warrant enhanced damages under 35 U.S.C. § 284. Sercomm has formed a good faith belief that the Patents-In-Suit are invalid, unenforceable, and/or not infringed by Sercomm.

**FOURTEENTH DEFENSE**
**(No Indirect Infringement)**

There is also no indirect infringement of the Asserted Patents under any theory, including

theories of induced or contributory infringement.

**FIFTEENTH DEFENSE**
**(Patent Misuse)**

Atlas has engaged in patent misuse through its licensing activities with respect to the Patents-In-Suit, and specifically has engaged in licensing activities in an effort to expand the physical and/or temporal scope of the patent by utilizing the alleged essentiality of its Wi-Fi 6 standards essential patents, and the market power derived therefrom, to charge licensing rates that are disproportionate to the physical coverage of its patents to the Wi-Fi 6 standard, and to engage in bundling and tying activities that use the purported SEPs to extract royalties beyond the physical and temporal scope of the Asserted Patents. These licensing and bundling activities render the Patents-In-Suit unenforceable.

To the extent that the Court treats patent misuse as an affirmative defense rather than as a counterclaim as pleaded below, Sercomm incorporates-by-reference the numbered paragraphs in its patent misuse counterclaim recited below (paragraphs 42-48).

**RESERVATION OF AFFIRMATIVE DEFENSES**

Sercomm hereby reserves the right to supplement its affirmative defenses as discovery proceeds in this case.

**COUNTERCLAIMS**

Defendant and Counterclaim-Plaintiff Sercomm Corporation ("Sercomm") hereby submits its Counterclaims against Plaintiff and Counterclaim-Defendant Atlas Global Technologies LLC ("Atlas"), and upon information and belief as to the actions of all persons and entities other than Sercomm, alleges as follows:

**THE NATURE OF THE ACTION**

1. By these Counterclaims, Sercomm is seeking damages and injunctive relief to

address Atlas' contractual breaches, broken promises, and unclean hands through its patent misuse in connection with its overt and intentional breach of its FRAND commitments made before standards-bodies and industry organizations, including the IEEE and Wi-Fi alliance. Atlas has been discriminatory in its treatment of licensees, and has not provided offers to license the Asserted Patents on FRAND terms. Moreover, Atlas has engaged in licensing activities that unfairly exaggerate the importance of Newracom's contributions to the Wi-Fi 6 standard and harness Newracom's relatively minor contributions to expand the physical and temporal scope of the Asserted Patents well beyond their actual scope.

## THE PARTIES

2. Counterclaim-Plaintiff Sercomm Corporation ("Sercomm") is a Taiwanese corporation with its principal place of business at 8F, No. 3-1, YuanQu St. (Nankang Software Park), Taipei 115, Taiwan.

3. Counterclaim-Defendant Atlas Global Technologies ("Atlas") is a limited liability company organized under the laws of Texas with its principal place of business at 4413 Spicewood Springs Rd., Suite 101, Austin, TX 78759.

## JURISDICTION AND VENUE

4. This Court has exclusive original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331. This action arises under the Patent Act of 1952, 35 U.S.C. §§ 1, *et seq.*, as amended. Exclusive jurisdiction for any action arising under any Act of Congress relating to patents is conferred on U.S. District Courts pursuant to 28 U.S.C. § 1338(a).

5. This Court has supplemental jurisdiction over Sercomm's Counterclaims of Breach of Contract, Promissory Estoppel, and Patent Misuse/Unclean Hands, pursuant to 28 U.S.C. § 1367 because the claim is so related to claims in this action within such original jurisdiction that it forms

part of the same case or controversy under Article III of the United States Constitution.

6. Atlas has submitted to jurisdiction in this Court.

7. Venue is proper in this District pursuant to 15 U.S.C. § 22; 28 U.S.C. §§ 1391(b), (c), and (d); and 28 U.S.C. §§ 1400(b) because this suit was filed in this District by Atlas, and on information and belief Atlas conducts business in this District.

## INTERSTATE COMMERCE

8. The products at issue in this action are sold in interstate commerce, and the unlawful activities alleged in this Counterclaim have occurred in, and have a substantial effect on, interstate commerce.

## GENERAL ALLEGATIONS

9. Atlas acquired the Asserted Patents through assignment on February 19, 2021, from Newracom, Inc. ("Newracom"). Newracom was the original owner of the Asserted Patents through assignment from the named inventors.

10. Newracom has been a member of the IEEE's Wi-Fi 6 working group that considers and adopts standards for the Wi-Fi 6 standard (802.11ax), and was a participant in the standardization meetings that led to the final publication of the 802.11ax-2021 standard discussed by Atlas in its complaint.

11. On March 11, 2015, Newracom submitted a "Letter of Assurance for Essential Patent Claims" to the IEEE, which was directed to Newracom's licensing with respect to "Standard/Project Number: IEEE802.11ax." The Letter of Assurance is attached to this Answer as Exhibit A and incorporated by reference herein.

12. Joongwon Cho, the Vice President of Newracom's IP group, signed the letter of assurance on March 11, 2015 and bound Newracom and its successors in interest (including Atlas)

to its terms with respect to the Asserted Patents.

13. In its submission, Newracom acknowledged that it "may own, control, or have the ability to license Patent Claims that might be or become Essential Patent Claims."

14. With respect to any Patent Claims that might become Essential Patent claims, Newracom agreed in Section D.1. of its letter of assurance that "it will grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination." This constituted a commitment to license patents essential to the IEEE 802.11ax standard on Fair, Reasonable, and Non-Discriminatory (FRAND) terms.

15. In Section E of the Letter of Assurance, Newracom further made a commitment that it was providing a "Blanket Letter of Assurance. As such, all Essential Patent Claims that the Submitter may currently or in the future have the ability to license shall be available under the terms as indicated above in part D.1."

16. Newracom, Inc. filed its applications for each of the Asserted Patents in this case after Newracom submitted its Letter of Assurance to the IEEE, and therefore was aware of its binding contractual commitments to license on FRAND terms with respect to any Essential Patent Claims when it filed for those patents.

17. When the Patents-In-Suit were assigned to Atlas, Atlas inherited the binding contractual commitments Newracom made in the Letter of Assurance submitted to the IEEE. Indeed, per IEEE policy, "[a]n Accepted Letter of Assurance is intended to be binding upon any and all assignees and transferees of any Essential Patent Claim covered by such [Letter of Assurance]." *See* https://standards.ieee.org/about/policies/bylaws/sect6-7/. Moreover, the policy notes that a submitter like Newracom "shall not, with the intent of circumventing or negating any

of the representations and commitments made in the Accepted Letter of Assurance, assign or otherwise transfer any rights in any Essential Patent Claims that they hold, control, or have the ability to license and for which licensing assurance was provided on the Accepted Letter of Assurance." *Id.*

18. Per IEEE policy, "[a] Letter of Assurance is irrevocable once submitted and accepted and shall apply, at a minimum, from the date of the standard's approval to the date of the standard's transfer to inactive status." *Id.*

19. Throughout the allegations of the First Amended Complaint alleging infringement, Atlas asserts that the Asserted Patents include Essential Patent Claims to the 802.11ax standard as that term is understood in the context of the IEEE Letter of Assurance.

20. To the extent that Sercomm infringes any of the Asserted Patents, Atlas' infringement allegations are premised entirely on the Asserted Patents being essential to the Wi-Fi 6 (802.11ax-2021) standard.

21. Atlas has licensed the Asserted Patents to other parties, including Samsung, as has been disclosed in publicly available documentation. *See, e.g.*, https://www.mondaq.com/unitedstates/patent/1188230/with-a-particularly-large-license-agreement-under-its-belt-acacia39s-wi-fi-6-campaign-reaches-more-defendants.

22. On information and belief, Samsung received a license to the Asserted Patents from Atlas on more favorable terms than have been offered to other parties, including Sercomm. Prior to filing the Complaint, Atlas never provided Sercomm with a proposed license or royalty rate, let alone a FRAND royalty rate. To the extent that Atlas has engaged in licensing discussions with Sercomm after it filed the Complaint, moreover, it has engaged in discrimination and has not offered Sercomm a license to the Asserted Patents on comparable terms to those received by

Samsung and, on information and belief, other parties that have obtained licenses from Atlas.

23. In addition to being a participant in IEEE, Newracom is also a member of the Wi-Fi Alliance, and was a member when it obtained the Asserted Patents and assigned them to Atlas. *See* https://www.wi-fi.org/membership/member-companies?title=newracom. The purpose of the Wi-Fi Alliance is to promote the IEEE 802.11 wireless networking standard.

24. Sercomm is also a current member of the Wi-Fi Alliance. *See* https://www.wi-fi.org/membership/member-companies?title=sercomm.

25. Members in the Wi-Fi alliance are bound to follow the Wi-Fi Alliance Intellectual Property Rights Policy ("Wi-Fi Alliance IP Policy"), a copy of which is attached to this Answer as Exhibit B.

26. Per Section 3.2 of the Wi-Fi Alliance IP Policy, Members such as Newracom who contribute to standards agree to "grant to other Members" (such as Sercomm) licenses to their Necessary (or Essential) Patent Claims "under reasonable and nondiscriminatory terms," consistent with the Letter of Assurance Newracom submitted to the IEEE and the FRAND commitments made therein.

27. Wi-Fi Alliance members such as Newracom also agree pursuant to Section 3.2 of the Wi-Fi Alliance IP Policy that "it will not transfer, and has not transferred, patents or patent applications having Necessary Claims for the purpose of circumventing this Section 3.2. In the event of a transfer of patents or patent applications have Necessary Claims, the Member agrees to provide notice to the transferee of the patent disclosure and licensing declaration under Article 4." *See also* Wi-Fi Alliance IP Policy Section 3.5 (confirming that a transfer of essential patent claims is subject to the Wi-Fi Alliance Policy). On information and belief, Newracom has provided licensing declarations to the Wi-Fi Alliance consistent with those it provided to the IEEE.

**FIRST COUNTERCLAIM**
**(Breach of Contract)**

28. Sercomm incorporates the allegations in paragraphs 1-27 of its counterclaims as if fully set forth herein.

29. On information and belief, IEEE has required committee members and participants to disclose patents that are potentially essential to the 802.11 standards being developed by IEEE, and to agree to license those patents either at no charge or on FRAND terms pursuant to the Letter of Assurances that are submitted by member companies. Member companies such as Newracom understand when they send the IEEE Letter of Assurance (Section G) that "the representations and commitments provided in this LOA and acknowledge that users and implementers of the [Proposed] IEEE Standard . . . are relying or will rely upon and may seek enforcement of the terms of this [Letter of Assurance]."

30. On information and belief, Atlas was under a contractual obligation to disclose any potential Standard Essential Patents to the IEEE and to abide by the FRAND licensing terms and principles to which it committed in the Letter of Assurance with respect to any such patents.

31. Sercomm is informed and believes, and on that basis alleges, that for consideration, including its membership and participation in the IEEE's 802.11 standardization committees and its membership in the Wi-Fi Alliance, Newracom entered into an express and/or implied contract with the IEEE and the Wi-Fi Alliance, to which others, including Sercomm, are members, participants, and third party beneficiaries of the contractual terms and policies discussed above.

32. On information and belief, Atlas is irrevocably bound to the contractual obligations that Newracom has entered into with the IEEE and Wi-Fi alliance, and is encumbered by Newracom's FRAND and similar commitments.

33. To the extent that any of the Asserted Patents are essential to the implementation

of IEEE standards, Atlas has breached its contractual obligations to license such patents on FRAND terms because it has not offered Sercomm any FRAND license, and has instead pursued litigation.

34. Sercomm has incurred damages and irreparable harm and will be further damaged in the future due to Atlas' breach of its contractual obligations. Atlas' breach of contract has injured Sercomm, subjecting it to the choice of paying substantial litigation expenses, ceasing to manufacture the accused products, or paying greater than FRAND royalties. Such damages include, without limitation, lost profits and lost opportunities, a reduction in output, the ongoing threat of having to pay unreasonable royalties, the costs of having to defend this lawsuit, and the threat of other lawsuits that may be brought by Atlas with regard to other SEPs it owns. As a result of these contractual breaches, Sercomm has been injured in its business or property, and is threatened by imminent loss of profits, loss of customers and potential customers, and loss of goodwill and product image.

**SECOND COUNTERCLAIM**
**(Promissory Estoppel)**

36. Sercomm incorporates the allegations in paragraphs 1-35 of its counterclaims as if fully set forth herein.

37. Pursuant to the Letter of Assurance submitted to the IEEE, Newracom made a promise to the IEEE that it would provide licenses to its Standards Essential Patents to the 802.11ax-2011 standard on FRAND terms, and Atlas inherited and is encumbered by that promise.

38. On information and belief, Newracom made an equivalent promise to the Wi-Fi alliance that it would provide licenses to its Standards Essential Patents to the 802.11ax-2011 standard on FRAND terms, and Atlas inherited and is encumbered by that promise as well.

39. It was foreseeable to both Newracom and Atlas that prospective licensees such as

Sercomm that support the Wi-Fi 6 (802.11ax) standard would rely on the promises made in the IEEE Letter of Assurance and to the Wi-Fi alliance. For example, when Newracom signed the Letter of Assurance, it "acknowledge[d] that users and implementers of the [Proposed] IEEE Standard . . . are relying or will rely upon and may seek enforcement of the terms of this [Letter of Assurance]." On information and belief, Atlas is aware of this same acknowledgement.

40. Sercomm has substantially relied on the promises made by Newracom and Atlas in choosing to implement products that utilize the Wi-Fi 6 (802.11ax) standard, and in particular relied on promises that any standard essential patents to the IEEE's Wi-Fi 6 (802.11ax) standard would be licensed on FRAND terms.

41. Sercomm has incurred damages and irreparable harm and will be further damaged in the future due to its reliance on Atlas' failed promises. Atlas' conduct has injured Sercomm, subjecting it to the choice of paying substantial litigation expenses, ceasing to manufacture the accused products, or paying greater than FRAND royalties. Such damages include, without limitation, lost profits and lost opportunities, a reduction in output, the ongoing threat of having to pay unreasonable royalties, the costs of having to defend this lawsuit, and the threat of other lawsuits that may be brought by Atlas with regard to other SEPs it owns.

## THIRD COUNTERCLAIM
## (Patent Misuse/Unclean Hands)

42. Sercomm incorporates the allegations in paragraphs 1-41 of its counterclaims as if fully set forth herein.

43. Atlas alleges that the Asserted Patents are standards essential patents, and is relying on the patents' essentiality to file this litigation against Sercomm and assert market power against Sercomm. Notably, Atlas filed this litigation without even providing a license offer to Sercomm, let alone a FRAND license offer. To the extent its patents are essential to the 802.11ax standard,

mere possession of those patents is sufficient to confer market power in the market for Wi-Fi compatible products, as such patents can be used to unfairly block or hold-up adopters of the standards, including Sercomm. *See, e.g.*, *Research In Motion Ltd. v. Motorola, Inc.*, 2008 WL 5191922, *6 (N.D. Tex. 2008).

44. As a result of the market power it maintains as a result of its possession of purported standard essential patents, Atlas has attempted to impermissibly broaden the physical and temporal scope of its patent grant with anticompetitive effect in ways that subvert patent policy interests. Specifically, by filing its lawsuit and simultaneously refusing to license the Asserted Patents to Sercomm on FRAND terms, it is enhancing the physical scope of the patents as though they cover the entirety, or at least a large proportion of, the 802.11ax-2021 (Wi-Fi 6) standard, even though the claims of the Asserted Patents, to the extent essential to the standard at all, would at best constitute minor contributions to the 802.11ax standard and only a small subset of the standardized technology. Therefore, Atlas' licensing activities constitute an improper attempt to expand the scope of its patent grant beyond that which is recited in any Essential Patent Claims of the Asserted Patents. The only reason that Sercomm is able to engage in such activities is because it is able to free-ride from the benefit of the patents being potentially essential to the Wi-Fi 6 standard, and Sercomm cannot design-around an adopted standard.

45. Additionally, Atlas has asserted seven Asserted Patents in this litigation, but on information and belief Atlas is attempting to use the seven, allegedly essential patents asserted here to demand that Sercomm and others license Atlas' larger patent portfolio that comprises approximately 300 patents in total.

46. On information and belief, several of the additional patents in Atlas' Wi-Fi 6 portfolio that it has sought to license to Sercomm are not essential to the 802.11ax standard. Atlas'

own website admits that that its portfolio includes "over 175 issued US Patents, 126 of which are Wi-Fi 6 Standard Essential." https://atlasglobaltechnologies.com/ (Patent Licensing). Therefore, even Atlas itself concedes that approximately 50 of the US patents in its Wi-Fi 6 portfolio are not standards essential. But for the alleged essentially of the Asserted Patents, Atlas would not be able to tie its license to the Asserted Patents to other, non-essential patents. On information and belief, and in the alternative to its effort to expand the physical scope of the patents as discussed above, Atlas is tying licensure of the seven Asserted Patents to its efforts to license non-essential patents. Those non-essential patents, on information and belief, have a broader physical coverage and expand temporally beyond the Asserted Patents at issue here. Atlas' efforts to tie or bundle the Asserted Patents to licensure of non-essential patents is yet another way that Atlas is leveraging the Asserted Patents to improperly expand the physical and/or temporal bounds of its patent grant with respect to the Asserted Patents-In-Suit.

47. Atlas' misuse of its patents in its dealings with the IEEE, the Wi-Fi Alliance, Sercomm, and others has had an anticompetitive effect on companies, such as Sercomm, against whom Atlas has used litigation and its unwillingness to license on FRAND terms as an anticompetitive weapon. Companies like Sercomm that Atlas has sued have been forced to devote resources to Atlas' litigation campaign and have been pressured to pay disproportionate royalties to maintain their consumer goodwill and business relationships, so that Atlas can inflate the value of its standard essential patents against other entities that support the Wi-Fi 6 standard. Atlas' conduct has allowed it to leverage its patents to exploit disproportionate market power in the Wi-Fi 6 market, and Atlas' activities have also harmed Sercomm's ability to compete against other players in the Wi-Fi 6 market that have not been sued by Atlas and been refused a license on FRAND terms for Atlas' Wi-Fi 6 patents. Indeed, Atlas has sued Sercomm and ASUSTeK, for

example, but it has not sued or demanded licenses from numerous other companies that support the Wi-Fi 6 standard or who are members of the Wi-Fi alliance. This conduct has imposed an anticompetitive injury on Sercomm.

48. As a result of Atlas' patent misuse, Atlas has acted in bad faith, has unclean hands, and equitable principles dictate that the Asserted Patents are therefore unenforceable against Sercomm.

## PRAYER FOR RELIEF

WHEREFORE, Sercomm denies that Atlas is entitled to any relief, including the relief requested in its Prayer for Relief, Sercomm respectfully requests that the Court enter a judgment against Atlas and in favor of Sercomm as follows:

A. That Atlas takes nothing and is denied any relief whatsoever;

B. That the claims of the Asserted Patents be declared to be invalid and/or unenforceable;

C. Awarding Sercomm damages sufficient to compensate it for the injuries it has sustained on account of Atlas' breach of contract and violations of promissory estoppel;

D. Compelling Atlas to offer licenses to the Asserted Patents on FRAND terms, pursuant to a FRAND rate set by the Court;

E. Awarding Sercomm its costs incurred in connection with this action;

F. That this case be deemed exceptional pursuant to 35 U.S.C. § 285 and that Sercomm be awarded reasonable attorneys' fees;

G. That Atlas be enjoined from its attempts to license the Asserted Patents, or any other patents that might be essential to the 802.11ax standard, on unreasonable or discriminatory terms;

H. That Atlas be enjoined from leveraging its essential patents to extract licenses to other

patents that are not essential to the 802.11ax standard;

I. That Sercomm be awarded pre-judgment and post-judgment interest in accordance with the law; and

J. That Sercomm be awarded such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Sercomm demands a trial by jury as to all claims, affirmative defenses, counterclaims, and issues properly triable thereby.

Dated: November 14, 2022

Respectfully submitted,

By: */s/ John Caracappa*

John Caracappa (admitted *pro hac vice*)
Matthew Bathon (admitted *pro hac vice*)
Stanley Kuo (admitted *pro hac vice*)
Christopher Suarez (admitted *pro hac vice*)
jcaracappa@steptoe.com
mbathon@steptoe.com
skuo@steptoe.com
csuarez@steptoe.com
**STEPTOE & JOHNSON, LLP**
1330 Connecticut Avenue, NW
Washington, D.C. 20036
Telephone: (202) 429-3000
Facsimile: (202) 429-3902

G. Blake Thompson
State Bar No. 24042033
Blake@TheMannFirm.com
J. Mark Mann
State Bar No. 12926150
Mark@TheMannFirm.com
**MANN | TINDEL | THOMPSON**
201 E. Howard St.
Henderson, Texas 75654
(903) 657-8540
(903) 657-6003 (fax)

*Counsel for Defendant Sercomm Corporation*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on November 14, 2022, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3). Any other counsel of record will be served by a facsimile transmission or first-class mail.

*/s/ John Caracappa*
John Caracappa